FILED
2016 Mar-04  PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BETTY JEAN NIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 7:15-cv-00250-LSC |
| ) | |
| CRACKER BARREL OLD ) | |
| COUNTRY STORE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### Memorandum of Opinion

Plaintiff Betty Jean Nixon ("Nixon") filed this action against Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") alleging that Cracker Barrel discriminated against her on the basis of race in violation of 42 U.S.C. § 1981 and § 2000a. Nixon also asserted claims for intentional infliction of emotional distress, negligence, and defamation. Cracker Barrel asserted counterclaims for conversion and for violations of the Alabama Litigation Accountability Act. Before the Court is Cracker Barrel's motion for summary judgment on all of Nixon's claims. (Doc. 37.) For the reasons stated below, Cracker Barrel's motion for summary judgment (Doc. 37) is due to be granted.

I. **BACKGROUND**[1]

On August 31, 2014, Nixon and her granddaughter visited the local Cracker Barrel. They walked into the store and placed a "to-go" order with a "real polite" cashier who told them that it would be around twenty minutes before the food would be ready. (Nixon. Depo. at 59–64.) While they waited for the food, Nixon and her granddaughter stayed at the store and played checkers and browsed the store merchandise. At one point, Nixon picked up a Yankee Candle, smelled it and put it back down. (Nixon Depo. at 61–62.) Ten-to-fifteen minutes after she placed her order, a male employee, also polite and professional, gave Nixon her food. Nixon then paid the same cashier with whom she had placed her order. After paying for the food, Nixon and her granddaughter left the store. Other than the cashier and the employee who brought her the food, Nixon did not speak with or encounter any other Cracker Barrel employees during her visit that day. (Nixon Depo. at 65:1–4.) Nixon then went home and ate her meal, which she says tasted as if it had been burned. (Nixon Depo. at 72–73.)

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys & Networks Corp v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Later that day, Mary Heath ("Heath"), a manager at that Cracker Barrel store, filed a police report stating that Nixon put at least two candles into her purse while waiting for her food. (Doc. 37-4 at Page 58.) The police report also stated that "Heath had video footage of the suspects taking the items from the store." (Doc. 37-4 at Page 58.) A little over two weeks later, Cracker Barrel employee Amberly Bumpus ("Bumpus") gave additional statements regarding Nixon's behavior, which she personally observed in the store that day and which led her to believe that Nixon had stolen some candles. (Doc. 37-4 at Pages 60–67.) Based on the information given by Heath and Bumpus, a warrant was issued for Nixon's arrest. (Doc. 37-4 at Page 59.) Nixon does not know Heath or Bumpus personally. (Nixon Depo. at 106:16–21.)

The police went to Nixon's home to arrest her, but she was not home. The officers told Nixon's neighbor, James Sealy, Jr. that she had stolen candles from Cracker Barrel. (Nixon Depo. at 69.) Nixon turned herself in at police headquarters, where she was handcuffed, booked, and released anywhere from thirty minutes to a couple of hours later. (Nixon Depo. at 76–78; Nixon Depo. at 142–143.) Nixon was not placed in jail or otherwise put into a holding cell. (Nixon Depo. at 92:6–11.) Nixon was represented in her criminal proceedings by a public

defender, whom she did not pay, and her charges were eventually dismissed. (Nixon Depo. at 78–79.)

Following her arrest, Nixon cried for "several days" and could not sleep. (Nixon Depo. at 93–94.) Other than the initial crying, her arrest did not impact her performance at work. (Nixon Depo. at 96.) Following her arrest, Nixon could function, but was nervous. It "was just hard for [her] to . . . try to pull [her]self together." (Nixon Depo. at 95–96.) Also, Nixon's relationship with her family was not negatively impacted because of the Cracker Barrel incident and arrest. (Nixon Depo. at 98–99.) Since her arrest, Nixon has not seen a psychologist, a psychiatrist, or any other mental health care professional and does not currently have plans to see one. (Nixon Depo. at 80–81.) Nixon has spoken with her pastor five or six times in general terms about how "certain things" that were "very important" had "come up" and were bothering her, but she has not given him any details. (Nixon Depo. at 94; 140.) Nixon had filed a Chapter 13 bankruptcy petition a few years before she filed this action on February 11, 2015. Nixon was discharged from bankruptcy on September 9, 2015, although she never updated her bankruptcy filings to disclose her lawsuit against Cracker Barrel.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use

caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. Discussion[2]

### A. Judicial Estoppel

Cracker Barrel first contends that Nixon's claims are barred by judicial estoppel because she failed to include this action as an asset in her Chapter 13 bankruptcy schedules. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). Application of the judicial estoppel doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* at 1285 (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). Because judicial estoppel

---

[2] As an initial matter, Cracker Barrel contends that Nixon's response brief to its motion for summary judgment should be stricken because it was untimely, having been filed on Monday, February 8, 2016 when it was due on Friday, February 5, 2016. (Doc. 40 at Page 2.) However, Cracker Barrel's motion is due to be granted *even if* this Court considers Nixon's response brief and accompanying evidence, and thus Cracker Barrel's request to strike is denied.

protects the process, not a specific party, the one asserting the doctrine need not show that it detrimentally relied on the other party's previous assertions or even that it was involved in the previous proceeding. *See Burnes*, 291 F.3d at 1286.

The Eleventh Circuit primarily analyzes two factors when applying judicial estoppel to a particular case. *See id.* at 1285 (noting that the "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire*). First, a party's allegedly inconsistent position must have been "made under oath in a prior proceeding." *Id.* at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

### i. Inconsistent Position Made Under Oath

"A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010). Specifically, in Chapter 13 proceedings, a debtor has an ongoing duty to amend her asset schedules to reflect additional assets. *See id.* As such, the Eleventh Circuit has held that "the failure to

timely amend a Chapter 13 . . . plan to reflect a pending claim while simultaneously pursuing that claim in another court of law constitutes inconsistent positions under oath." *Id.* at 1275. Here, Nixon filed for Chapter 13 bankruptcy on July 16, 2010 and was discharged on September 9, 2015, almost seven months after she filed this lawsuit against Cracker Barrel. Despite the existence of this pending action, Nixon did not amend her asset schedules to include her claims against Cracker Barrel. For almost seven months, Nixon took inconsistent positions by simultaneously pursuing her claims against Cracker Barrel while omitting them from her asset schedules.

### ii. Mockery of the Judicial System

"When considering a party's intent for the purpose of judicial estoppel, [the law] require[s] 'intentional contradictions, not simple error or inadvertence.'" *Id.* (quoting *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983)). However, direct evidence that a party acted with intent to deceive the court is not required. Rather, "deliberate or intentional manipulation can be inferred from the record" where the debtor had (1) knowledge of the undisclosed claims and (2) a motive for concealment. *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294 (11th Cir. 2003) (quoting *Burnes*, 291 F.3d at 1287).

Because Nixon knew about her claims against Cracker Barrel, the issue of Nixon's motive to conceal is the determining factor as to whether Nixon is judicially estopped from pursuing those claims. If the parties had settled this case before she was discharged from bankruptcy, then Nixon could have successfully hidden those proceeds from the Bankruptcy Court and her creditors. This result would have made a mockery of the judicial system by simultaneously using it to recover damages yet evading its bankruptcy requirements. Accordingly, the Court infers from the record that Nixon acted intentionally when she took these inconsistent positions.

Nixon's attorney in this case recently discovered the bankruptcy and instructed her to have her petition amended, but by that time she had already been discharged from bankruptcy. Nixon offers this attempt to show that she did not have a motive to conceal, however the failure of her attorney to find out about her bankruptcy until after she had been discharged did not relieve Nixon of her own personal responsibility to amend her petition during the months this litigation and her bankruptcy proceedings were both ongoing. *See, e.g.*, *Barger*, 348 F.3d at 1295 ("Although it is undisputed that [the plaintiff]'s attorney failed to list [her] discrimination suit on the schedule of assets despite the fact that [she] specifically told him about the suit, the attorney's omission is no panacea. . . . '[K]eeping this

suit alive merely because the plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962)). Nixon is judicially estopped from bringing her claims and summary judgment is due to be granted in Cracker Barrel's favor.

### B. Denial of Benefits or Enjoyment of a Public Accommodation

Even if she was not judicially estopped from bringing her claims, Nixon's § 2000a discrimination claim nonetheless fails on its merits. Section 2000a states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

Nixon contends that Cracker Barrel denied her the equal enjoyment of goods by lying and accusing her of taking candles without proof other than the testimony of two Caucasian employees. However, Nixon has failed to show that she was denied the full and equal enjoyment of Cracker Barrel's food and services. Nixon testified that she walked into the restaurant, ordered, and received her food,

encountering two polite and professional employees in the process.[3] Further, even if her arrest, nearly a month later, can be said to fall within the scope of § 2000a, Nixon has offered no evidence that Cracker Barrel pressed charges against her because of her race. Summary judgment is thus due to be granted as to Nixon's § 2000a claim.

## C.     Section 1981 Claim

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race . . . including 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981). More specifically, "[t]he elements of a cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority; (2)

---

[3] Nixon's response to Cracker Barrel's motion for summary judgment contends that the footage from Cracker Barrel's surveillance camera would provide evidence of "the tone of the environment" at the store that day and show how African Americans were being treated in the store, but that Cracker Barrel has not produced the video. Nixon attached her request for production of the video to her response. In its reply, Cracker Barrel attached its response to Nixon's request for production in which it states that "Defendant will make any responsive video footage available for inspection at the offices of Defendant's counsel at a time and date mutually agreed upon by the Parties." (Doc. 40-1 at Page 5.) It appears that Nixon did not follow up with Cracker Barrel regarding a time and date to inspect the video footage, and Nixon did not otherwise file a motion to compel the video evidence with this Court. To the extent Nixon's statement in her response brief can be taken as a request that the Court sanction Cracker Barrel for its failure to produce the video footage, the Court declines to do so, as the evidence indicates that Cracker Barrel was ready and willing to make the footage available for inspection.

that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned [the making or enforcement of a contract].'" *Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)).

The parties do not dispute that Nixon is a member of a racial minority, satisfying the first element. However, Nixon has not created a genuine issue of material fact as to the second and third elements. She has offered no evidence that Cracker Barrel discriminated against her on the basis of her race while she was in the store or later when they pressed charges against her. Further, Nixon has not created a genuine issue of material fact as to the third element. Nixon's testimony shows that her experience in ordering, paying for, and receiving her food was pleasant.[4] She has failed to show that the "exercise of her contractual rights was . . . 'in some way thwarted.'" *Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 892 (11th Cir. 2007) (holding that the plaintiff's § 1981 claim failed when the plaintiff entered into a verbal contract for a pizza delivery but terminated the contract when the delivery was late and then received discriminatory phone calls from the restaurant, because the telephone calls constituted post-contractual

---

[4] Although Nixon testified that the food did not taste very good, she made no attempt to request a refund or that Cracker Barrel remake her order. Further, to the extent Nixon contends that Cracker Barrel discriminated against her by not cooking her food correctly, she has failed to offer any evidence of discriminatory intent.

activity, which "cannot form the basis of a § 1981 claim"). The alleged discriminatory activity—Cracker Barrel's decision to press charges and Nixon's subsequent arrest—was post-contractual activity and does not support a claim under § 1981.

Nixon further contends that she had an implied contract with Cracker Barrel that she would be treated the same way she had been treated on her previous visits to the restaurant. Nixon points to the conduct of Cracker Barrel and its employees during her previous visits as creating a promise that she would be treated with respect and dignity. "Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement." *Welborn v. Snider*, 431 So. 2d 1198, 1200 (Ala. 1983). Other than pointing to the fact that she was not accused of stealing during previous visits to the store, Nixon has failed to produce evidence indicating that Cracker Barrel intended to become contractually bound to not accuse Nixon of stealing candles. No implied contract existed to form a basis for Nixon's § 1981 claim. Thus, summary judgment on this claim is due to be granted.

### D.   Intentional Infliction of Emotional Distress

Nixon further brings a claim for intentional infliction of emotional distress based on Cracker Barrel's filing the police report against her. In Alabama, the tort

of intentional infliction of emotional distress (also known as the tort of outrage) is "an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). "In order to recover, a plaintiff must demonstrate that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Id.* (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)). The Alabama Supreme Court has emphasized the extreme nature of the defendant's conduct required for a plaintiff to succeed on her claim, as well as emphasizing the severity of emotional distress the plaintiff must have experienced:

> "The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. By extreme we refer to conduct to outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Potts*, 771 So. 2d at 465 (quoting *American Road Service Co. v. Inmon*, 394 So. 2d 391, 365 (Ala. 1981)).

Even if Nixon could show that Cracker Barrel filed the police report with the intent to inflict emotional distress or that it knew or should have known that it would likely cause emotional distress, she has not shown how Cracker Barrel's filing a police report was "so extreme in degree as to go beyond all possible bounds

of decency" and "regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 465 (noting that Alabama courts have found this element met "in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment"). Nixon concedes that she did play checkers and looked at, picked up, and held a Yankee Candle while waiting for her food, and only disputes the accusation that she put the candle in her purse. (Nixon Depo. at 105–106.) She has offered no evidence showing that she was accused of putting the candles in her purse for any reason other than a genuine belief that she had actually done so. Cracker Barrel's actions do not rise to the level of conduct Alabama cases have recognized as sufficiently outrageous. *See, e.g.*, *Potts*, 771 So. 2d at 465 (holding that filing a report of the plaintiff-nurse's drug addiction with the state nursing board, which then brought formal charges against the plaintiff, was not actionable as extreme and outrageous conduct under the tort of intentional infliction of emotional distress).

Finally, Nixon has failed to offer evidence indicating that Cracker Barrel caused emotional distress "so severe that no reasonable person could be expected to endure it." *Potts*, 771 So. 2d at 465. Nixon has not seen a psychologist or a psychiatrist or any other mental health care professional since she was arrested,

although she has spoken to her pastor five or six times in general terms about how "certain things" that were "very important" had "come up" and were bothering her. (Nixon Depo. at Page 80–81; 94; 140.) Nixon cried for "several days" and had trouble sleeping in the week following her arrest but the arrest did not otherwise impact her performance at work or alter her relationship with her family.

This emotional distress Nixon experienced does not rise to the level of severity recognized by Alabama caselaw. *See, e.g.*, *Harrelson v. R.J.*, 882 So. 2d 317, 322–23 (Ala. 2003) (holding that a minor who had been sexually assaulted at a sleepover suffered severe emotional distress because after the assault she became much more emotional and became hysterical once a month, became more fearful, did not improve despite counseling from mental health experts, and wrote poetry indicating that she wanted to die). Summary judgment on this claim is thus due to be granted in Cracker Barrel's favor.

E. Negligence

Nixon also claims that Cracker Barrel was negligent in wrongfully accusing her of theft. While Nixon's complaint alleges negligence, her response to Cracker Barrel's motion for summary judgment does not address her negligence claim or Cracker Barrel's arguments in favor of summary judgment on it. Thus, this Court treats Nixon's failure to address her negligence claim as abandoning the claim. *See,*

*e.g.*, *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) ("[A court can] properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment.").

### F. Defamation of Character

Nixon further claims that Cracker Barrel defamed her when they accused her of stealing the candles. "To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Delta Health Group, Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004). However, qualified privilege, an affirmative defense, attaches to certain communications, and the plaintiff must show that the defendant made those otherwise-privileged communications with actual malice. *Butler v. Town of Argo*, 871 So. 2d 1, 26 (Ala. 2003). The Alabama Supreme Court has held that a statement made by a grocery store employee to a police officer that a woman "had passed the register and she did not pay for the groceries that she had," was protected by qualified privilege. *See Tidwell v. Winn-Dixie, Inc.*, 502 So. 2d 747, 748 (Ala. 1987). Thus, the general

manager's similar statement to the police is likewise protected by a qualified privilege, requiring Nixon to show that it was made with actual malice.

Nixon has failed to offer any evidence showing that the accusation of theft was made with actual malice. She has not offered evidence showing that the Cracker Barrel employees who filed the police report and gave statements did so maliciously. Without some evidence showing that Cracker Barrel acted with actual malice when it accused Nixon of theft, no genuine issue of fact exists. Summary judgment on Nixon's defamation claim is due to be granted in Cracker Barrel's favor.

## IV.   Conclusion

For the reasons stated above, Cracker Barrel's motion for summary judgment (Doc. 37) is due to be GRANTED. A separate order consistent with this opinion will be entered. The Court notes that Cracker Barrel has filed a motion for sanctions. (Doc. 38.) In light of this Opinion, Cracker Barrel's motion for sanctions (Doc. 38) is MOOT. If Cracker Barrel still believes that it is entitled to sanctions, it may file a motion to amend this judgment entered in its favor.

**DONE** AND **ORDERED** ON MARCH 4, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184